IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MACK, | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiff, | : | |
| | : | Transferred from the |
| | : | Northern District of |
| v. | : | California |
| | : | (Case No. 10-03165) |
| | : | |
| GENERAL ELECTRIC COMPANY, | : | E.D. PA CIVIL ACTION NO. |
| ET AL., | : | 2:10-78940-ER |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    October 3, 2012


TABLE OF CONTENTS

I.   BACKGROUND................................................ 3
II.  LEGAL STANDARD............................................ 5
     A.   Summary Judgment Standard........................... 5
     B.   The Applicable Law (Maritime Law)................... 6
III. DISCUSSION............................................... 10
     A.   Maritime Law Objectives............................ 10
     B.   Sophisticated User Defense Under Maritime Law...... 12
     C.   A Navy Ship Is Not a "Product"..................... 25
     D.   Application........................................ 28
IV.  CONCLUSION............................................... 29

        This case presents two issues of first impression under

maritime law.  First, is a Navy ship a "product" within the

meaning of product liability doctrine. Second, does maritime law

recognize a sophisticated user and/or sophisticated purchaser

defense and, if so, to what causes of action does the defense(s)

apply.

The Court has previously rehearsed these issues without reaching a definite conclusion. Some defendants in the MDL have sought recognition of a sophisticated user defense. In doing so, they have relied upon caselaw applying the substantive law of one or more states, asking this Court to apply state law in a case governed by maritime law. See, e.g., Prange v. Alfa Laval, Inc., No. 09-91848, 2011 WL 4912828, at *1 (E.D. Pa. July 22, 2011)(Robreno, J.)(Doc. No. 264)(ruling on motion appearing at Doc. No. 162); Hays v. A.W. Chesterton, Inc., No. 09-93728, 2012 WL 3096621, at *1 (E.D. Pa. May 1, 2012)(Robreno, J.). Other defendants have also attempted to persuade the Court that cases decided under maritime law by other courts have recognized the defense. The Court has previously rejected the argument, noting that there was no clear precedent, together with the absence of any compelling reason for the Court to create new law recognizing such a defense. See, e.g., Hays, 2012 WL 3096621, at *1 (Doc. No. 336)(ruling on motion appearing at Doc. No. 312-1). Now, for the first time, the Court is presented with a clear-cut case where it must decide whether the sophisticated user defense is cognizable under maritime law.

Because the Defendants are builders of Navy ships, it is also appropriate at this time to consider, in tandem, whether a Navy ship is a "product" for purposes of application of strict product liability law. This issue also was previously raised but

not saluted by the court. The Court has reviewed the relevant state law, as well as the existing body of federal and maritime law, seeking to discern trends in the law regarding these issues.

For the reasons that follow, the Court now decides that, under maritime law, (1) a manufacturer or supplier of a product has no duty to warn an end user who is "sophisticated" regarding the hazards of the product, (2) the sophistication of an intermediary (or employer) – or the warning of that intermediary (or employer) by a manufacturer or supplier – does not preclude potential liability of the manufacturer or supplier, and (3) a Navy ship is not a "product" for purposes of strict product liability. In light of these determinations, summary judgment in favor of these shipbuilder Defendants is granted with respect to Plaintiff's strict liability claims because, under maritime law, a Navy ship is not a "product" for purposes of strict product liability. Summary judgment in favor of these Defendants is denied with respect to Plaintiff's negligent failure to warn claims because no Defendant has identified evidence that Plaintiff was a sophisticated user of the asbestos insulation for which Plaintiff seeks to hold it liable.

I.   BACKGROUND

This case was transferred in August of 2010 from the United States District Court for the Northern District of California to the United States District Court for the Eastern

3

District of Pennsylvania as part of MDL-875. Plaintiff James Mack
alleges that he was exposed to asbestos aboard various Navy ships
during the 1960s and 1970s, while employed by the Department of
Defense as a welder. He was deposed in December of 2011. He has
brought both negligence and strict product liability claims
against various defendants, alleging, <u>inter alia</u>, that Defendants
are liable for failing to warn him of the hazards of asbestos
associated with the products for which he alleges they are
responsible.

Defendants are shipbuilders: Todd Pacific Shipyards
Corporation ("Todd Shipyards"), Northrop Grumman Shipbuilding,
Inc. ("Northrop Grumman"), and General Dynamics Corporation
(formerly known as USX Corporation) ("General Dynamics")
(collectively, "Defendants"). Each Defendant has moved for
summary judgment, contending, <u>inter alia</u>, that it is free from
liability in this case by way of the sophisticated user defense.
Defendants have asserted, further, that they cannot face
liability on a claim brought under a strict product liability
theory because a ship (here, a Navy ship) is not a "product" to
which strict product liability theory applies.

Many of the parties initially briefed the issues under
California law. By Order dated July 18, 2012, the Court allowed
the parties to submit further briefing under maritime law,
including policy justifications for their respective positions,

in order to inform the Court's decision regarding a recognition by maritime law of a sophisticated user defense. (See Doc. No. 61.) Having considered these arguments, the Court now rules on this issue, as well as whether a Navy ship is a "product" for purposes of strict product liability.

## II.  LEGAL STANDARD

### A.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party.  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of

N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

>    B.   The Applicable Law (Maritime Law)

In their initial briefing, several of the parties asserted that California law applies to at least certain issues in this case, including the sophisticated user defense. However, where a case sounds in admiralty, application of a state's law would be inappropriate. Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131-32 (3d Cir. 2002).[1] Therefore, if the Court determines that maritime law is applicable, the analysis ends there and the Court is to apply maritime law. See id.

Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F.

---

[1]   As discussed more fully below, while application of state law under the Erie doctrine would not be appropriate, maritime law may borrow — and the Court may inform its judgment by reference to — state law.

Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This Court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

        In order for maritime law to apply, a plaintiff's exposure underlying a product liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially

disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

        (i)   Locality Test

        If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

        (ii)  Connection Test

        When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will almost always meet the connection test necessary for the application of maritime law. Conner, 799 F. Supp. 2d at 467-69 (citing Grubart, 513 U.S. at 534). This is

8

particularly true in cases in which the exposure has arisen as a result of work aboard Navy vessels, either by Navy personnel or shipyard workers. See id. But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. Id.

It is undisputed that the alleged exposure pertinent to Defendants occurred during Plaintiff's work as a welder aboard various ships. Therefore, this exposure was during sea-based work. See Conner, 799 F. Supp. 2d 455; Deuber, 2011 WL 6415339, at *1 n.1. Accordingly, maritime law is applicable to Plaintiff's claims against Defendants. See Conner, 799 F. Supp. 2d at 462-63.

Absent a controlling statute, maritime law is "developed by the judiciary" and is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864-65 (1986). A court deciding an issue under maritime law should look to - and has discretion to determine and define – the "prevailing view" on land, with an eye toward advancing the primary goals of maritime law. See, e.g., id.; Pan Alaska Fisheries, Inc. v. Marine Constr. & Design Co., 565 F.2d 1129, 1134 (9th Cir. 1977).

III.  **DISCUSSION**

A.  Maritime Law Objectives

Maritime law seeks to promote several policy objectives. First, since time immemorial, it has been one of the primary goals of maritime law to protect maritime workers from the perils of working at sea. See Chandris, Inc. v. Latsis, 515 U.S. 347, 354 (1995)(quoting the Jones Act (46 U.S.C. App. § 688, superseded by 46 U.S.C. § 30104 (2006))); The Arizona v. Anelich, 298 U.S. 110, 123 (1936); Grant Gilmore and Charles L. Black, Jr., Law of Admiralty Ch. 6 (2d ed. 1975). In doing so, maritime law draws a distinction between sea-based workers and land-based workers, favoring protection of those working at sea. See McDermott Intern, Inc. v. Wilander, 498 U.S. 337, 353 (1991) (discussing the Jones Act and Longshore and Harbor Workers Compensation Act and stating: "The key to seaman status is employment-related connection to a vessel in navigation.  . . . [W]e hold that a necessary element of the connection [in order to obtain maritime protection] is that a seaman perform the work of a vessel.").

Second, maritime law seeks to promote and protect maritime commercial activity. See Foremost Ins. Co. v. Richardson, 457 U.S. 668, 675 (1982) (noting "the goal of promoting the smooth flow of maritime commerce"); Sisson v. Ruby,

497 U.S. 358, 364 n.2 (1990) (stating that, in <u>Foremost Ins. Co.</u>
<u>v. Richardson</u>, 457 U.S. 668, 674-75 (1982), Supreme Court
"unanimously agreed that the purpose underlying the existence of
federal maritime jurisdiction is the federal interest in the
protection of maritime commerce"); <u>Mullane v. Chambers</u>, 483 F.3d
132, 138 (1st Cir. 2006)(discussing the "overarching goal [of]
keeping the channels of maritime commerce open"); <u>Villaverde v.</u>
<u>Drott Mfg. Corp., a Div. of J.I. Case Co.</u>, 899 F.2d 20, 1990 WL
39079, at *1 (9th Cir. 1990)(unpublished) (discussing "maritime
law's goals of protection of maritime commerce").

Third, maritime law is concerned with promoting
uniformity in the law of the sea. <u>See</u> <u>Miles v. Apex Marine Corp.</u>,
498 U.S. 19 (1990) (discussing <u>Moragne v. States Marine Lines,</u>
<u>Inc.</u>, 398 U.S. 375, 401 (1970)); <u>Miller v. American President</u>
<u>Lines, Ltd.</u>, 989 F.2d 1450, 1462 (6th Cir. 1993). Accordingly, in
reviewing the trends in the law across the country and
considering the policy arguments presented by the parties
regarding whether maritime law should recognize a sophisticated
user or sophisticated purchaser defense, the Court is mindful of
the need to promote and balance these goals of maritime law.
Determining whether a recognition of the sophisticated user
and/or sophisticated purchaser defense will promote these
objectives is the task before the Court.

11

B.   <u>Sophisticated User Defense Under Maritime Law</u>

Section 388 of the Restatement (Second) of Torts[2] sets forth a provision which gives rise to a "sophisticated user" and/or "sophisticated purchaser" defense. It reads:

§ 388. Chattel Known To Be Dangerous For Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388.[3] Comment "k" to Section 388

---

[2]    Maritime law has previously adopted section 402A of the Restatement (Second) of Torts in the context of product liability claims. <u>See</u>, <u>e.g.</u>, <u>East River Steamship Corp.</u>, 476 U.S. at 865; <u>Saratoga Fishing Co. v. J.M. Martinac & Co.</u>, 520 U.S. 875, 879 (1997).

[3]    Section 388 references only suppliers ("one who supplies"). However, Section 394 extends the application of Section 388 to manufacturers. Similarly, Section 399 extends the application of Section 388 to sellers. Thus, the defense(s) discussed herein apply to manufacturers, suppliers, and sellers of a given product.

contemplates what is commonly known as the "sophisticated user" defense, while comment "n" contemplates situations in which it may be appropriate to allow a "sophisticated purchaser" defense.[4]

     (i)       <u>Existing Jurisprudence</u>

Many jurisdictions recognize a sophisticated user and/or sophisticated purchaser defense. However, the nature and application of such a defense varies from one jurisdiction to another such that there is not one uniform rule. <u>See</u>, <u>e.g.</u>, Restatement (Second) of Torts § 388 comment "n" (discussing a division across courts in application of a "sophisticated purchaser" defense). Moreover, there is a lack of clarity in the existing jurisprudence, as courts have not been consistent within or across jurisdictions in applying the various forms of the defense, and some have referred to them interchangeably or as being part of the same defense.

By way of illustration, in <u>Johnson v. American Standard, Inc.</u>, the Supreme Court of California recognized the "sophisticated user" defense in cases where the end-user is a

---

[4]    Courts have also sometimes referred to a "sophisticated intermediary" defense which, for purposes of the decision herein, arising under maritime law, appears to be essentially the same as the "sophisticated purchaser" defense, insofar as an "intermediary" (like a "purchaser," as the term is used in this context) is not the ultimate user of the product. For ease of reference, the Court discusses herein only a "sophisticated purchaser" defense, although the rationale of the Court's decision regarding the "sophisticated purchaser" defense applies equally to any "sophisticated intermediary" defense.

member of a "class" of users that generally knew (or should have
known) of the dangers at issue.[5] 43 Cal. 4th 56 (Cal. 2008). In
Johnson, the hazardous product at issue was a fluid known as
"R-22," a hydrochlorofluorocarbon refrigerant. The plaintiff sued
the R-22 manufacturer for failure to warn of the danger that the
fluid could decompose into dangerous phosgene gas when exposed to
heat and flame. The court held that the defendant was entitled to
summary judgment because the plaintiff was a sophisticated user
of R-22. In reaching this conclusion, the court considered
undisputed evidence presented by the defendant that the plaintiff
was a certified heating, ventilation, and air conditioning (HVAC)
technician who had also received additional training and
certifications – both on and off the job – including an
Environmental Protection Agency (EPA) "universal" certification
awarded after he passed a five-part exam.[6] The court reasoned
that HVAC technicians could reasonably be expected to know of the

---

[5]     It appears that a defendant may also establish the
defense by showing that an individual plaintiff was sophisticated
as to the hazards of asbestos (i.e., with a showing of the
plaintiff's subjective knowledge of those hazards).

        Whether a given user is sophisticated is generally an
issue of fact. See, e.g., Gray v. Badger Mining Corp., 676 N.W.2d
268 (Minn. 2004); Conwed Corp. v. Union Carbide Corp., 287 F.
Supp. 2d 997 (D. Minn. 2003).

[6]     "Universal" certification is the highest certification
an HVAC technician can obtain from the EPA, and it allows those
certified to work on, and purchase, refrigerant for large
commercial air conditioning systems.

hazard at issue concerning R-22. It noted that the study guide for plaintiff's Environmental Protection Agency (EPA) "universal" certification, as well as Material Safety Data Sheets (MSDS) that had been given to him, explained the dangers at issue.

A subsequent case decided by the intermediate court of appeals in California distinguished both a "sophisticated intermediary" defense and a "sophisticated purchaser" defense from the "sophisticated user" defense. Stewart v. Union Carbide Corp., 190 Cal. App. 4th 23 (Ct. App. 2010). Stewart involved an appeal by an asbestos supplier in response to a jury verdict awarded against it and in favor of a plumber. In that case, the defendant-supplier asked the trial court to instruct the jury on what it referred to as a "sophisticated purchaser" defense – and, on appeal, argued that the trial court wrongly refused the instruction. The appellate court noted that, under California law, the "sophisticated purchaser" defense (as opposed to the "sophisticated user" defense) applies in situations in which the sophisticated entity is the employer of the end-user of the product, and that the "sophisticated intermediary" defense (where applicable) requires a manufacturer to establish that it provided adequate warnings to the intermediary. Id. at 29-30.

In another asbestos case, In re Related Asbestos Cases, a federal district court predicted that California law would recognize a defense precluding liability of an asbestos product

manufacturer in cases brought by Navy seamen, where the Navy was shown to be sophisticated as to the hazards of asbestos (i.e., a "sophisticated purchaser" or "sophisticated intermediary" defense). 543 F. Supp. 1142 (N.D. Cal. 1982). However, the federal court referred to this defense (perhaps incorrectly) as a "sophisticated user" defense. Id. at 1151.

Similarly, the court in O'Neal v. Celanese Corp. held that a manufacturer was relieved of liability because an intermediary purchaser of a product (who was not the end-user of the product and was, instead, the employer of the end-user) was knowledgeable of the hazards of the product. 10 F.3d 249, 251 (4th Cir. 1993)(negligence action brought by welder against seller of factory equipment under Maryland law). However, in contrast to Stewart, despite having specifically identified the employer as an "intermediary" and a "purchaser," the court referred to the defense as the "sophisticated user" defense.

Notwithstanding the inconsistencies and lack of clarity in the jurisprudence, the Court concludes that, when distilled to its essence, under the "sophisticated user" defense, as generally understood, the manufacturer or supplier of a product has the burden of demonstrating that the ultimate end-user (i.e., the plaintiff or person injured by the product – as opposed to the person or entity to whom the product was sold or supplied (e.g., an intermediary such as the Navy or an employer)) was a

16

"sophisticated" user of the product. As explained by one court, this is because, under the circumstances, the failure to provide warnings about risks to sophisticated users "usually is not a proximate cause of harm resulting from those risks suffered by the buyer's employees or downstream purchasers." Johnson, 43 Cal. 4th at 65.

In applying the defense, courts have provided little guidance as to what will suffice to establish that a user qualifies as "sophisticated." In Johnson, the Supreme Court of California held that the defense applies where a user "knew, or should have known" of the particular risk of harm from the product at issue, and specified that the defense can be found to apply based on the user being part of a "class of users" who would be expected to know of the hazards (as opposed to requiring a showing of the individual plaintiff's actual knowledge of the hazards). 43 Cal. 4th 56.

By contrast, under the "sophisticated purchaser" defense, a manufacturer or supplier of a product is absolved of liability for any harm that comes to the ultimate end-user if (i) the manufacturer or supplier adequately warned the purchaser (which could include an intermediary such as the Navy or an employer) of the hazards associated with the product, or (ii) it was reasonable for the manufacturer or supplier to rely on the intermediary to warn the ultimate end user (e.g., the plaintiff

17

or seaman/employee).[7]

    A canvassing of these authorities shows that, of the
two defenses (i.e., "sophisticated user" and "sophisticated
purchaser"), the majority of courts to have considered the issue
have adopted the defense set forth by the Restatement (Second) of
Torts as the "sophisticated user" defense. See Taylor v. American
Chemistry Council, 576 F.3d 16, 25 (1st Cir. 2009)(Massachusetts
law); Carrel v. National Cord & Braid Corp., 447 Mass. 431 (Mass.
2006); Gray v. Badger Mining Corp., 676 N.W.2d 268, 276-79 (Minn.
2004); Roney v. Gencorp., 654 F. Supp. 2d 501, 508 (D.W. Va.
2009) (West Virginia law); Stewart, 190 Cal. App. 4th 23
(implicitly rejecting). See also In re Manbodh Asbestos
Litigation Series, 2005 WL 3487838, at *14 n.37 (V.I. Super.
2005) (collecting cases). While many courts recognizing this
defense also recognize a "sophisticated purchaser" defense, many
have declined to adopt the "sophisticated purchaser" defense
(either rejecting it completely or declining to apply it at the

---

    [7]    In applying this defense, courts have differed as to
whether a defendant must establish one or both of these factors,
as well as what is required to establish those factors. See,
e.g., In re Manbodh Asbestos Litigation Series, 2005 WL 3487838,
at *11, 14 (V.I. Super. 2005) (requiring both); Taylor v.
American Chemistry Council, 576 F.3d 16, 26 (1st Cir.
2009)(holding that "reasonable reliance" is not an element of the
defense); O'Neal, 10 F.3d at 252 (allowing defense where
reasonable to believe that intermediary was aware of danger); In
re Asbestos Litigation (Mergenthaler), 542 A.2d 1205, 1212 (Del.
Super. 1986)(allowing defense where reasonable to believe
purchaser/employer is aware of danger unless there is reason to
suspect the warning will not be conveyed to the end user).

summary judgment stage). <u>See</u> <u>Little v. Liquid Air Corp.</u>, 952 F.2d 841, 851 (5th Cir. 1992)(Mississippi law), <u>rev'd en banc on other grounds</u>, 37 F.3d 1069 (5th Cir. 1994); <u>Donahue v. Phillips Petroleum Co.</u>, 866 F.2d 1008 (8th Cir. 1989)(Missouri law). <u>See also</u> <u>In re Manbodh Asbestos Litigation Series</u>, 2005 WL 3487838, at *14 nn.36-37 (collecting cases).

(ii) <u>Policy Considerations</u>

In addition to examining the trend in the law across jurisdictions, the Court now turns to policy implications that are unique to maritime law. To begin, recognition of a sophisticated user defense under maritime law would serve to encourage participation in maritime commerce by limiting – in a reasoned manner – potential liability of those entities involved in such commerce while continuing to protect those sea workers in need of protection (i.e., those workers who are not sophisticated as to the hazards to which their work exposes them). Accordingly, adoption of the sophisticated user defense would further these objectives of maritime law, while increasing uniformity in the law. Therefore, the Court now holds that maritime law recognizes the sophisticated user defense.

Next, as a practical matter, recognition of a sophisticated purchaser defense would have two effects. First, with respect to commercial maritime workers (i.e., merchant marines), recognition of a sophisticated purchaser defense would

discourage work at sea and, in turn, impair rather than promote maritime commerce. Second, at least with respect to Navy seamen, it would have the effect of leaving them (and their survivors) with no remedy.[8] This is because the sophisticated purchaser defense places the burden of warning (and accompanying liability for failing to warn) on the purchaser of the asbestos, which, in the case of Navy seaman, was the United States Navy. As such, the recognition of a sophisticated purchaser defense under maritime law would have the effect of thwarting the primary aim of maritime law of protecting and providing remedies for those who work at sea.

Moreover, the Court notes that adopting the sophisticated user defense while rejecting the sophisticated purchaser defense, as stated above, is consistent with the analysis provided in comment "n" to Section 388 of the Restatement (Second) of Torts, which balances the benefits and burdens of providing warnings against the costs and feasibility

---

[8]     It is well-established that Navy seamen and their survivors have no claim against the United States government for their asbestos-related injuries arising as a result of their Navy service. See Feres v. United States, 340 U.S. 135 (1950)(federal government not liable under the Federal Tort Claims Act for injuries to servicemen arising out of or in the course of activity incident to military service). While the Feres doctrine does not apply to all maritime workers employed by the federal government (such as Mr. Mack, the Plaintiff herein), at this stage of the asbestos litigation, the vast majority of asbestos claims brought by employees of the federal government are brought by Navy seamen (or their survivors) for injuries incurred during their service in the Navy.

of providing warnings directly to the end-user.[9]

In situations involving asbestos hazards aboard vessels, the risks involved are often serious and even fatal. Moreover, the risks of asbestos were faced by very large numbers of maritime workers aboard both commercial vessels and Navy ships. As such, the magnitude of the risk of asbestos injury was quite large, while the burden of providing warnings to end users (such as the cost of including warning labels on products), generally speaking, would have been comparatively small.[10]

---

[9]     Comment "n" reads, in pertinent part:

[I]n every case which involves the determination of the precautions which must be taken to satisfy the requirements of reasonable care, **the magnitude of the risk involved must be compared with the burden which would be imposed by requiring them** (see § 291), and the magnitude of the risk is determined not only by the chance that some harm may result but also the serious or trivial character of the harm which is likely to result (see § 293). Since **the care which must be taken always increases with the danger involved**, it may be reasonable to require those who supply through others chattels which if ignorantly used involve grave risk of serious harm to those who use them and those in the vicinity of their use, to take precautions to bring the information home to the users of such chattels....

Thus, ... **if the danger involved in the ignorant use of a particular chattel is very great, it may be that the supplier does not exercise reasonable care in entrusting the communication of the necessary information even to a person whom he has good reason to believe to be careful.**

Section 388, comment n (emphasis added).

[10]     Whether the manufacturers of products supplied for use aboard Navy ships were permitted to provide such warnings gives

In light of all of the foregoing considerations, the Court rejects the argument of Defendants and finds that the "sophisticated purchaser" defense is not available under maritime law in cases involving asbestos.

(iii) <u>Application of the Sophisticated User Defense</u>

Having established that maritime law now recognizes a sophisticated user defense (but not a sophisticated purchaser defense) in the context of asbestos cases, the Court next considers the application of that defense. In order for a defendant to avail itself of this defense, it must establish that the plaintiff (or decedent) injured by the product it manufactured or supplied was "sophisticated" as to the hazards of that product. The Court concludes that a "sophisticated user" is an end user who either knew or belonged to a class of users who, by virtue of training, education, or employment could reasonably be expected to know of the hazards of the product at issue.[11]

Existing jurisprudence is inconsistent on the issue of

_____

rise, of course, to the government contractor defense. <u>See</u> <u>Willis v. BW IP Int'l, Inc.</u>, 811 F. Supp. 2d 1146 (E.D. Pa. Aug. 29, 2011)(Robreno, J.); <u>Boyle v. United Technologies Corp.</u>, 487 U.S. 500, 512 (1988).

[11]    Comment "k" to Section 388 of the Restatement (Second) of Torts explains: "One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character . . . if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved."

whether the "sophisticated user" defense may only be raised against negligent failure to warn claims, or whether it may also be raised against strict liability claims[12] pertaining to defective or inadequate warnings.[13] This Court holds that the maritime law "sophisticated user" defense recognized herein serves only to bar the former. As explained by the District Court of New Jersey in Menna v. Johns-Manville Corp., "negligence law focuses on the reasonableness of defendants' conduct, while strict liability focuses on defendants' product without regard to conduct or fault. . . It follows logically that the duty to warn.

---

[12] The Court notes for the sake of clarity that, with respect to allegedly inadequate warnings, maritime law recognizes both strict product liability causes of action (i.e., defective warning or defective design) and a negligent failure-to-warn cause of action. See Conner v. Alfa Laval, Inc., 842 F. Supp. 2d 791, 796-97 (E.D. Pa. 2012)(Robreno, J.) ("Products-liability theories, including strict products liability, are well within maritime law" and include "three distinct theories of liability: manufacturing defects, design defects, and defects based on inadequate warnings") (citing East River Steamship Corp., 476 U.S. at 865; Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d 121, 123 (3d Cir. 1984); Restatement (Third) of Torts: Prods. Liab. § 2 (1998) (previously Restatement (Second) of Torts § 402A (esp. comments h and j))); Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005).

[13] See, e.g., Russo v. Abex Corp., 670 F. Supp. 206, 207 (E.D. Mich. 1987) (holding that defense may only be raised in context of negligent failure to warn claims); Menna v. Johns-Manville Corp., 585 F. Supp. 1178, 1184 (D.N.J. 1984)(also holding that defense may only be raised in context of negligent failure to warn claims); O'Neal, 10 F.3d at 251 (citing Kennedy v. Mobay Corp., 325 Md. 385 (Md. 1992), aff'g 84 Md. App. 397 (Md. App. 1990))(holding defense applicable to both types of claims); Johnson, 43 Cal. 4th at 71 (holding defense applicable to both types of claims).

. . cannot depend on a particular [user]'s knowledge or level of sophistication." 585 F. Supp. 1178, 1184 (D.N.J. 1984).

It is noteworthy that the Restatement (Second) of Torts provides the defense to manufacturers, suppliers, and sellers only within the sections of the Restatement pertaining to "Negligence" (see Division II, §§ 281-503) – and does not provide any parallel defense in the sections pertaining to "Strict Liability" (see Division III, §§ 504-24). Moreover, the Court notes that it would run counter to the purpose for which strict liability is imposed for a manufacturer's liability to turn on the product users' characteristics, such as sophistication, which are out of the control of the manufacturer.

In order to serve the maritime goal of protecting seamen, and in accordance with the Restatement (Second) of Torts and the rationale underlying the very concept of strict liability, the Court concludes that the defense does not apply to strict product liability claims. Therefore, even if a defendant can establish through evidence in the record that a plaintiff (or decedent) was "sophisticated" as to the hazards of asbestos, it is only a defense to negligence-based claims (e.g., claims of negligent failure to warn) and does not bar liability that may arise under a strict product liability theory (e.g., a defective warning claim).

C.   A Navy Ship Is Not a "Product"

24

Having determined that the sophisticated user defense does not apply to bar strict product liability claims, the Court next addresses Defendants' argument that a Navy ship is not a product. Whether a Navy ship is a "product" for purposes of strict product liability under maritime law is an issue of first impression before the Court. Both the Supreme Court and the Sixth Circuit have identified – but have avoided reaching –  the issue of whether a ship is a product for purposes of strict product liability law. See Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875 (1997) (noting that lower courts have held that it is a "vessel" at issue (rather than its component parts) that is the "product" placed into the stream of commerce); Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 375 (6th Cir. 2001) (declining to decide whether a merchant marine ship described as an "ocean-going vessel" was a "product" for purposes of strict product liability).

Although the Fifth Circuit has held that a ship is a "product," it did so in the context of oil tankers that the Court explicitly noted were designed by the shipbuilder (in contrast to a Navy ship designed by the Navy's specifications and assembled by a shipbuilder in accordance with the Navy's design specifications).[14] See Shipco 2295, Inc. v. Avondale Shipyards,

_____

[14]   At least one federal court of appeals has suggested that the factors determining whether a given vessel is a

Inc., 825 F.2d 925-26, 928 (5th Cir. 1987). Similarly, while state courts and lower federal courts have addressed the issue with respect to certain types of vessels,[15] the Court is unaware of any such decision regarding Navy ships.

With respect to builders of Navy ships (such as Defendants), the Court now holds that, although the sophisticated user defense as recognized by maritime law is a bar only to negligent failure to warn claims, the Defendants may not be held liable on a strict product liability claim brought in a case governed by maritime law. This is because, for the reasons set forth below, the Court concludes today that a ship is not a "product" within the meaning of strict product liability law.

As discussed above, maritime law seeks to promote maritime commerce and to protect those working at sea. Moreover, the policy underlying strict liability is to place the burden of preventing the harm on the party best able to prevent the harm. See, e.g., East River Steamship Corp., 476 U.S. at 866. In light

---

"product" may include such things as who designed it and whether it was custom-built or mass-produced. Stark, 21 F. App'x at 378.

[15]    See, e.g., Anderson v. Whittaker Corp., 692 F. Supp. 734 (W.D. Mich. 1987)(involving a Trojan F-32 cabin cruiser used for leisure boating); Marshall v. Wellcraft Marine, Inc., 103 F. Supp. 2d 1099 (S.D. Ind. 1999)(involving pleasure yacht); In re Rationis Enterprises, Inc. of Panama, 325 F. Supp. 2d 318 (S.D.N.Y. 2004)(involving private cargo ship), rev'd in part, vacated in part (on other grounds) by Rationis Enterprises, Inc. of Panama v. Hyundai Mipo Dockyard Co., 426 F.3d 580 (2d Cir. 2005); Lewinter v. Genmar Industries, Inc., 26 Cal. App. 4th 1214 (Cal. App. 1994) (involving yacht).

of these policies, and after balancing the concerns and interests discussed herein, the Court concludes that, as between shipbuilders and the manufacturers of the various products assembled to complete a ship, the entities best able to protect sea-bound workers and to bear the burden of preventing harm to those workers (with the least discouragement of participation in maritime commerce by those entities most crucial to it) are the manufacturers of the various products aboard the ship.

After careful consideration, the Court concludes that, to impose upon a Navy shipbuilder potential liability for each of the thousands (if not tens of thousands) of products assembled in a Navy ship pursuant to Navy specifications, would be an undue, unmanageable, and cumulative burden likely to discourage the activity of shipbuilding. Moreover, the Court also recognizes that the entity most knowledgeable about – and with the most control over – a given product (such as a turbine, boiler, pump, or valve) is the manufacturer of that product (rather than the shipbuilder who must handle every product aboard the ship).

Finally, the Court finds that the role of the builder of Navy ships appears to be more like a provider of a service (assembly of an assortment of products) than a manufacturer or supplier of a product. See 63 Am. Jur. 2d Prod. Liab. § 617 ("The concept of strict tort liability does not apply to defective services, as opposed to defective products"); cf. McKee v. Miles

27

Lab., Inc., 866 F.2d 219, 221 (6th Cir. 1989)(Kentucky law);
Dudley v. Business Exp., Inc., 882 F. Supp. 199, 210 (D.N.H.
1994)(New Hampshire law); Coleman v. Charlesworth, 157 Ill.2d
257, 262 (Ill. 1993)(Illinois law); Watts v. Rubber Tree, Inc.,
121 Or. App. 21, 23 (Ore. 1993)(Oregon law). Accordingly, the
Court concludes that a Navy ship is not a "product" within the
meaning of maritime strict product liability law.[16]

    D.   <u>Application</u>

       In light of the Court's conclusion that a Navy ship is
not a "product" within the meaning of strict product liability
law, summary judgment in favor of these Defendant (i.e., Navy
shipbuilders) is warranted with respect to Plaintiff's claims
sounding in strict liability. As a result, Plaintiff's only
viable warnings-related claim against shipbuilder Defendants is a
negligent failure to warn claim.

       Each of these Defendants has argued that it is entitled
to summary judgment on grounds of the sophisticated user defense
because the Navy was sophisticated as to the hazards of asbestos
(i.e., Defendants have asserted what is actually a sophisticated
purchaser defense). As decided herein, maritime law does not
recognize a defense to Plaintiff's claims based on the

---

[16]    Although the Court has previously referred to
shipbuilders as "suppliers," no decision has ever turned on this
characterization, and the Court has never squarely addressed the
issue. For the sake of clarity, the Court now notes that a Navy
shipbuilder is not a supplier of products.

sophistication of the Navy, which, with respect to Plaintiff, was an intermediary and employer (i.e., maritime law does not recognize a sophisticated purchaser defense in asbestos cases).

None of these Defendants has presented evidence that Plaintiff (Mr. Mack) was sophisticated as to the hazards of the asbestos-containing insulation from which he alleges asbestos exposure, and for which he contends the shipbuilder Defendants are liable.[17] Nor have they shown that Plaintiff belonged to a class of users who would be expected to know of the hazards of asbestos. Therefore, summary judgment with respect to Plaintiff's negligent failure to warn claims is not warranted in favor of any of these Defendants on grounds of the sophisticated user defense. See Anderson, 477 U.S. at 248-50.[18]

## IV.   CONCLUSION

The Court concludes that, under maritime law, (1) a manufacturer or supplier of a product has no duty to warn an end user who is "sophisticated" regarding the hazards of the product, (2) the sophistication of an intermediary (or employer) – or the warning of that intermediary (or employer) by a manufacturer or

---

[17]   The Court notes that Defendants were specifically given an opportunity to provide briefing (and accompanying evidence) regarding both the sophisticated user and sophisticated purchaser defense, but failed to present evidence concerning Plaintiff's "sophistication" to support a sophisticated user defense.

[18]   Where a given Defendant has asserted any other basis for summary judgment, the Court has taken its other motion(s) under advisement for disposition by separate order.

supplier – does not preclude potential liability of the manufacturer or supplier, and (3) a Navy ship is not a "product" for purposes of strict product liability.

Summary judgment in favor of these shipbuilder Defendants is granted with respect to Plaintiff's strict liability claims because, under maritime law, a Navy ship is not a "product" for purposes of strict product liability. Summary judgment in favor of these Defendants is denied with respect to Plaintiff's negligent failure to warn claims because no Defendant has identified evidence that Plaintiff was a sophisticated user of the asbestos insulation for which Plaintiff seeks to hold it liable.